STATE OF IOWA EX REL. H. M. HAVNER, Plaintiff, v. ASSOCIATED PACKING COMPANY et al., Defendants.

DUTTON STAHL, Appellant, v. AUGUST GROSS et al., Defendants, Appellees.

No. 41946.

420

JANUARY 15, 1935.

Parrish, Cohen, Guthrie & Watters and Chas. Hutchinson, for appellant.

M. A. Roberts, S. W. Livingston, Donald Evans, and A. A. McLaughlin, for appellees.

Bradshaw, Schenk & Fowler, for Continental Casualty Co.

MITCHELL, J.—On September 29, 1932, judgments were rendered in favor of the appellees in the district court of Polk county, Iowa, against the receiver of the Associated Packing Company, and provided "that the receiver be required to pay to the Clerk for the benefit of such defendants respectively the sum herein awarded, on or before twenty days from the date of this order." On October 17, 1932, two days before the expiration of the twenty days within which the receiver was required to pay the judgments, an appeal was taken by the receiver, with permission of the court, and a supersedeas bond was on said date filed in the case, with the Continental Casualty Company as surety, and signed in its behalf by T. B. Moore as its attorney in fact.

The appeal was vigorously prosecuted, and on the 14th day of November, 1933, this court affirmed the judgment appealed from, and in due time petition for rehearing was filed, and on March 16, 1934, denied by this court. The opinion is set out in 217 Iowa 1172, 250 N. W. 876. On the 31st day of July, 1934, the appellees filed in the Supreme Court of Iowa a motion, asking for judgment against the principal and the surety on the appeal bond; the surety on the appeal bond being the Continental Casualty Company. To this motion the Continental Casualty Company filed a resistance, and the receiver also filed a resistance; the resistance of the receiver being based solely upon the fact that he is entitled to certain offsets.

The question which confronts us here is whether the motion of the appellees for judgment on the supersedeas bond shall be sustained and judgment entered on said supersedeas bond in this court.

There appears to be no dispute here between the appellees and the receiver. The appellees in their brief and argument agree that certain judgments for costs against some of the appellees should be offset against their several judgments against the receiver. The

dispute here is between the appellees and the Continental Casualty Company, the company that signed the supersedeas bond.

 The first question raised by the casualty company is that this court is without jurisdiction to enter the judgment. Code, section 12872, provides:

"The supreme court, if it affirms the judgment, shall also, if the appellee asks or moves therefor, render judgment against the appellant and his sureties on the appeal bond for the amount of the judgment, damages, and costs referred to therein in case such damages can be accurately known to the court without an issue and trial."

The statute above quoted provides that "the supreme court, if it affirms the judgment, shall also, if the appellee asks or moves therefor, render judgment against the appellant and his sureties on the appeal bond." The court has recognized such right of the appellee and duty of the court in numerous cases, and in Hoefling v. Borsen, 190 Iowa 645, 180 N. W. 750, entered judgment on the appeal bond on motion of the appellee in affirming the judgment, for rental value of real estate involved, pending the appeal, going to the record to ascertain what the rental value was. It appears the only limitation upon the right of this court to enter judgment in cases of this kind is in respect to cases where the damages may not be known without a trial. In the case at bar, the judgments appealed from were affirmed, and the damages can be accurately known to the court without trial, because the judgments are mere money judgments and are before the court, and all that is necessary is to make a computation of interest.

It should be noted that the offsets which the receiver claims are offsets which the appellees admit should be made. So there is no dispute between the parties in regard to these offsets. The amount in the case at bar is certain, and this court has the right, and it is its duty, to enter judgment on the supersedeas bond.

 But, the casualty company alleges, the bond was executed and delivered under a mutual misapprehension and mistake of fact. It appears from the record that the bond was signed by one T. B. Moore, who was a duly authorized agent of the casualty company; that the casualty company had a permit from the insurance commissioner to do business; that the casualty company filed in the clerk's office a certified copy of power of attorney to T. B. Moore

and D. J. Willis, granting them full power and authority to execute in its behalf fidelity and surety bonds not to exceed $250,000. In the power of attorney are set out the proceedings of the board of directors of the casualty company, authorizing the granting of such power of attorney. And it is provided therein that, when so executed, it shall be as binding and of the same force and effect as if executed by an officer of the company, duly authorized to execute the same. And such power of attorney further provides that "all the acts of said attorney pursuant to the authority hereby given, are hereby ratified and confirmed." But the casualty company says that, while it is true that it filed this power of attorney, Mr. Moore, their agent, did not have authority to sign supersedeas bonds except upon direct order of the company, and then only if cash collateral was placed with the company as security for the signing of the bond, and in no case in excess of $5,000. The bond in the case at bar was in the amount of $6,000. It appears that Mr. Moore signed the bond on behalf of the Continental Casualty Company, and, when he reported it to the company, the company notified him in writing that he had no authority to execute a supersedeas bond without full collateral security, and that he must immediately secure cash collateral in the full penalty of this bond and forward same to the home office, or arrange immediately to relieve the Continental Casualty Company of all liability upon this bond. Mr. Moore thereafter took the matter up with the receiver of the Associated Packing Company, and the receiver, without notice to the appellees or their attorneys, filed an application in the district court of Polk county, Iowa, asking for an order of court to withdraw and cancel the supersedeas bond signed by the Continental Casualty Company as surety; and on the 9th day of December, 1932, the district court of Polk county, Iowa, entered an order, signed by the Hon. Joseph E. Meyer, as follows:

"It is therefore ordered that said receiver be and he is hereby authorized to file with the clerk of this court the Public Indemnity Company bond in the amount of $6,000; this being the same amount as the bond heretofore furnished, and the Continental Casualty Company's bond is hereby cancelled and released and all further obligations as of this date, and the Public Indemnity Company bond filed herein will have the same force and effect as though originally executed and filed in this appeal."

It is the claim of the casualty company that Moore, its agent, exceeded·his authority in signing the bond. With this we cannot agree. Moore was the duly authorized agent of the Continental Casualty Company. There was a power of attorney on record in the clerk's office, authorizing him to sign bonds up to the amount of $250,000. The bond in question was only in the amount of $6,000. But the casualty company claims there was a secret agreement with Moore that he had no right or authority to sign supersedeas bonds. If the power of attorney does not show the actual authority of the agent, it certainly shows the apparent authority, and the principal is just as fully bound by the apparent authority of the agent as by the actual authority in cases where the party with whom the agent deals is without knowledge of limitations upon the apparent author· ity. In the case at bar, there is no claim that any one had any knowledge of the limitation upon the apparent authority of Moore except the casualty company and Moore. If the casualty company were permitted now to come in and set up the fact that there was a secret arrangement between themselves and their agent as to what authority he had in the signing of a supersedeas bond, then, in every case where a supersedeas bond is filed, the bonding company could come in and set up the defense that their agent did not have authority to sign the bond, although the power of attorney on record showed that he had that authority, and as a result, before a litigant could collect upon a supersedeas bond, he would be forced to the expense and trouble of a trial in the lower court, and, of course, an appeal to this court by the casualty company.

In the case of Fishbaugh v. Spunaugle, 118 Iowa 337, 341, 342, 92 N. W. 58, 60, it is said:

"It is a settled doctrine that the principal is bound not only by acts of his agent within the express limit of his instructions, but is also bound to the extent of the apparent authority conferred upon such agent; and this is true with reference to special agents as well as general agents. * * * This rule is applicable even against private instructions limiting the agent's power, where such limitations are not brought to the notice of the parties with whom the agent deals."

A very similar case is the case of Denecke v. West, 184 Iowa 600, 169 N. W. 97. This court, speaking through the late Justice Weaver, said:

"The appellant's further proposition, that the execution of such bond was not within the real or apparent scope of the authority conferred upon Higley, or Higley and Powell, is not borne out by the record. On the contrary, the power and authority of the company to enter into obligations of that nature being established, it is shown beyond doubt that such authority was delegated to their attorneys in fact. Naturally and properly upon this question we turn first to the written power itself, and that in express terms names both Higley and Powell as its lawful attorneys and agents, with power—'to make, execute, seal, and deliver for and on its behalf as surety, and as its act and deed, any and all bonds, recognizances, or undertakings, in the state of Iowa, for and on behalf of the company. And the execution of such bonds or undertakings in pursuance of these presents shall be as binding upon such company, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the company at its office in Boston, Mass., in their own proper persons.'

"The resolution of the board of directors provided for the granting of such powers of attorney, and declared that the bonds executed by such attorneys or agents—'shall be as binding upon such company as fully and amply to all intents and purposes as if they had been duly executed and acknowledged by the regularly elected officers of the company at its office in Boston, Massachusetts, in their own proper person.' This power of attorney and its authorization, the appellant admits, were duly recorded in Iowa. In their letter transmitting this power of attorney to Higley the state agents described it as giving powers which 'are practically unlimited,' but said to him that he would have to be guided by the limitations set out in a certain letter from the company, which was furnished him with that instrument. This letter with its limitation upon the power of the attorney was not recorded, nor is there any showing that it ever came to the notice or knowledge of the plaintiff until developed in this litigation. This letter of instructions tells the agent he must read it into his power of attorney, informs him that he is authorized to issue certain bonds without submission to the home office, and among the bonds so enumerated is the following:

" 'On contract bonds you are permitted to accept risks and execute bonds without reference provided the bond does not exceed $5,000 and the contract does not exceed $10,000.' * * *

"So far as the letter of instruction is concerned, it may serve to measure the obligation of the agent to his principal and be a matter of material consideration in questions or controversies arising between them, but it is hardly necessary to cite authorities in support of the proposition that, unless such instruction or limitation upon the power of the agent holding a power of attorney is brought home to the notice or knowledge of a third person who deals with the agent as such, it is wholly immaterial and will not serve to relieve the principal from any obligation which, except for such instruction, would be binding upon him. City of Davenport v. Peoria M. & F. Ins. Co., 17 Iowa 276; Viele v. Germania Ins. Co., 26 Iowa 9, 58 [96 Am. Dec. 83]; Spence v. Chicago, R. I. & P. R. Co., 117 Iowa 1, 5, 90 N. W. 346; Fishbaugh v. Spunaugle, 118 Iowa 337, 341, 92 N. W. 58. There is, as we have already noted, an utter absence of evidence that the limitation so placed upon the authority of Higley was brought to the notice of plaintiff, and we can conceive no sound reason for permitting the secret instructions by appellant to its agents to deprive plaintiff of his right to a recovery upon the bond. * * *

"Corporations, no less than natural persons, are held to the obligations of good faith and fair dealing." Pages 611–614 of 184 Iowa, 169 N. W. 97, 100.

Thus we come to the conclusion that there can be no question that the Continental Casualty Company was obligated upon the bond signed by Moore in the case at bar, and, under the record before us, they cannot now be permitted to repudiate that obligation.

But the casualty company says that the bond was never approved by the clerk. In the case of State of Iowa v. Fredericks, 8 Iowa 553, 557, this court said:

"Where the signatures to the bond are undenied, or if denied under oath, are proved, and where it is shown to have been made and signed by the officer and his sureties, as part of the 'qualification for office,' as it is styled in the Code—where the officer took the necessary oath, had the same indorsed on the bond, and both filed in the office of the proper clerk—where it is shown that thereupon he entered upon the duties of said office, and continued to fill the same—and when the bond is found in the possession of the state, and put in suit by her, we think these things are, at least, prima facie evidence that it was fully executed and accepted, and

until satisfactorily rebutted, entirely sufficient. If the bond never was, in fact, received or accepted, then, of course, the question would be very different. The presumption is, however, where it is produced from the proper depository, that it was properly approved and accepted. We are, at least, not inclined, except in a case clearly requiring it, to hold that such an objection can be made by the obligors on the bond. Relying upon the sufficiency and validity of the bond, the officer has been permitted to take upon himself the duties of the office, and enjoy its emoluments. Prima facie, at least, this undertaking was delivered by all the obligors, and received by the officers acting for the state and the school fund, as the proper official bond of the commissioner; and it does not lie in the mouth of those executing it, to say, that unless it was formally accepted and approved, it is invalid."

Likewise in the case at bar the bond was in the possession of the proper depository, and, in addition to this, there is an affidavit in the records of the clerk of the district court that the bond was accepted and approved at the time it was filed. And, quoting from the language of the case above cited, we say:

"And it does not lie in the mouth of those executing it, to say, that unless it was formally accepted and approved, it is invalid."

The casualty company also raises the question that no right under the bond accrued to appellees before the order of cancellation was entered, and that there was no liability on the bond until the judgment appealed from was affirmed by this court, and that, since it was affirmed after the order of releasing the bond was entered, the casualty company was not liable. In the case of Springer v. Metropolitan Casualty Co., 216 Iowa 1333, at page 1337, 249 N. W. 226, 228, this court said:

"Through the supersedeas bond, Paulsen obtained a stay of execution on the judgment in the district court pending the appeal. Before Paulsen could obtain such stay, it was necessary that a surety, or sureties, execute the supersedeas bond. Paulsen contracted with the appellant to thus execute his bond. Accordingly, for a consideration, the appellant did execute the bond. When thus executing the supersedeas bond, the appellant, as surety, guaranteed that Paulsen would pay the judgment and costs contemplated by the bond. * * *

"Upon signing the supersedeas bond, the appellant became liable for all costs in the case legally assessed against Paulsen."

It must therefore follow that the obligation of the surety is to pay the judgment when affirmed; that the appellee is entitled to have judgment entered on the bond in the Supreme Court upon filing motion therefor, and as a matter of right, independent of any question of whether he might, if he proceeded diligently, collect the amount of the judgment from the principal, and as said in the Springer case, "upon signing the supersedeas bond, the appellant became liable for all the costs in the case legally assessed against Paulsen." And so, in the case at bar, the minute the supersedeas bond was signed by the Continental Casualty Company, it became liable to pay the judgment if affirmed, and that liability continued unless and until payment should be made or surety released by consent of the appellees. The bond in this case having been duly accepted and duly filed, the casualty company became liable the minute that bond was filed, provided the case was affirmed by this court. The case was affirmed by this court, thus fixing the liability of the company.

Were the rights of the appellees otherwise in doubt, we are of the opinion that the Continental Casualty Company is estopped as a matter of law to set up the defense which it does in this case. The casualty company remained silent so far as the appellee or the clerk is concerned, after the filing of the bond. It did not notify either that the bond was filed by its agent without authority or in excess of his authority. It did not advise either that it claimed the bond was not effective or binding as against it. Instead thereof, and some fifty-three days after the filing and approval of the bond, the casualty company, through its agent, had the receiver make an application for substitution of another bond. By its very act of insisting that the receiver take the action suggested, it acquiesced in and ratified the act of its agent in signing the bond in its behalf. Under such circumstances, the Continental Casualty Company not only ratified the act of its agent, but it is estopped from questioning his authority or the validity of the bond. The judgment had been stayed more than fifty days before such action was taken. The appellees had been deprived of power to enforce their judgments during that period by reason of the bond. The appellees had been advised of the filing of the supersedeas bond, and, relying thereon, took no action in the premises because they were barred from doing

so. The appellees or their attorneys had no notice of any claim that the bond was not properly signed until after the rehearing was denied by this court—a matter of approximately a year and a half. It is shown by the resistance filed by the casualty company that it knew of the filing of the bond within a very few days after it was filed. Yet it kept perfectly still so far as the appellees and the clerk were concerned. And it kept perfectly still in reference to the proceedings for substitution as far as the appellees or their attorneys were concerned. No notice was given to them. Under such circumstances, the bonding company cannot now come in and say that the bond which was signed by its agent and duly filed was not fully effective and binding upon it.

There being no dispute in regard to the amount of the offset, if the appellees will file in the office of the clerk of the Supreme Court of Iowa a stipulation duly signed by the appellees and the receiver, setting out the exact amount of the offset to be allowed, the clerk of the Supreme Court is hereby directed and ordered to enter judgment upon the supersedeas bond against the Continental Surety Company for the amount of the judgment, less the amount of the offsets due the receiver, plus interest and costs, and the motion of the appellees for judgment is hereby sustained.

ANDERSON, C. J., and KINTZINGER, POWERS, HAMILTON, and PARSONS, JJ., concur.